GREATER CONTINENTAL CORPORA-TION, Appellant,

v.

Marvin SCHECHTER, Appellee,
and

Hugo Spatenga, Sea-Land Dredging Corp., Goldfeld, Charak, Brown, Tolins & Lowenfels, National Bank of North America, Fort Neck Landing Development Corp. and David Hawkins, Defendants.

No. 522, Docket 34390.

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1970.

Decided March 3, 1970.

William Schurtman, New York City (Shea, Gallop, Climenko & Gold, New York City, Peter P. Smith, III, New York City, on the brief), for appellant.

Richard H. Tunstead, New York City (Spencer & Tunstead, New York City), for appellee.

Before MEDINA, WATERMAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Appellant, Greater Continental Corporation ("Continental") appeals from an order of the United States District Court for the Southern District of New York, Marvin E. Frankel, Judge, denying a preliminary injunction to stay arbitration proceedings about to commence, which were initiated by the appellee (Schechter). Continental claims that the refusal of stay of the arbitration proceeding in this case fails to give effect to the intent of Congress expressed in the 1933 and 1934 securities acts, as recognized in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Although appellant may be correct on the merits, we find that this court lacks jurisdiction over the appeal and dismiss the appeal.

Since we dismiss for lack of jurisdiction, only a brief synopsis of the facts is necessary. The two parties executed an agreement for Continental's purchase of Sea-Land Dredging Corporation ("Sea-Land") on April 3, 1969 under which Continental was to purchase Sea-Land's stock, 2/3 of which was owned by Schechter and 1/3 owned by Spatenga. In exchange, Continental was to give the two sellers stock in Continental; Continental was also to pay Schechter cash and additional shares of Continental stock for Sea-Land's indebtedness to him. As part of the interrelated transactions involving this purchase, Continental and Schechter executed an employment contract on April 14, 1969 (the day of the closing of the stock purchase deal). Under this contract Schechter was to be an employee of Continental and was to manage Sea-Land (although not limited to that necessarily); Schechter was to devote full time to this employment, but it was agreed he would have six months to close out his existing law practice. By a supplemental letter made part of the employment contract, it was provided that any disputes arising under that contract would be settled by arbitration. The employment and purchase contracts each contained its own integration clause stating that the contract was the entire agreement of the parties for that subject.

Shortly after consummation of the purchase, Continental investigated the propriety of the financial statements and warranties given it by Sea-Land and Schechter, since it appeared that Sea-Land was having difficulties; as a result of this investigation, Continental subsequently determined to its own satisfaction that Schechter's representations as to Sea-Land's financial condition were fraudulent and decided to rescind the purchase contract. An at-

tempt at settlement having failed, Schechter instituted arbitration proceedings pursuant to the employment contract to get his unpaid salary and what he claimed he was owed as a prospective bonus from Continental. Continental then commenced this suit under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 (17 C.F.R. § 240.-10b–5) alleging fraudulent misrepresentation by Schechter and Sea-Land and others and seeking rescission of the purchase.[1] In its motion for a stay of arbitration, Continental claimed the arbitration clause was meant to apply solely to employment disputes and that any disputes over Schechter's employment in this situation were entirely subsidiary to the question of whether the purchase contract was valid or void for fraud; Continental contended it should be permitted to try the fraud issue in the federal courts rather than have it a part of the arbitration hearing with probable *res judicata* effects. Judge Frankel's order, in which the facts were set forth in more detail, denied the stay of arbitration.

██ The order is not appealable as a final order under 28 U.S.C. § 1291, and it does not fall within the narrow limits of orders found appealable under that section even though not final. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). This order is not a final disposition of any claimed right other than of the right to stay arbitration; moreover, since the arbitration findings are reviewable and not enforceable until confirmed, see New York's Civil Practice Law and Rules §§ 7510 and 7514, this order does not finally determine any issue which would foreclose Continental from any substantive right unless reviewed now. Compare, Cohen v. Beneficial Industrial Loan Corp., *supra*. Nor is the order appealable under 28 U.S.C. § 1292(a) (1), which permits appeal of an

interlocutory order if it is the grant or refusal of an injunction. We have long followed the well-established rule that an order granting or denying a stay in a court action pending arbitration is appealable, as being analogous to an injunctive order, only when the action which is sought to be stayed is one which would have been an action at law before the fusion of law and equity. Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, 269 F.2d 618, 621 (2d Cir.1959), Council of Western Electric Technical Employees-National v. Western Electric Co., 238 F.2d 892 (2d Cir. 1956) ; see also, Carcich v. Rederi A/B Nordie, 389 F.2d 692 (2d Cir.1968).

Where the order concerns granting or refusing a stay of arbitration proceedings, however, it is not a grant or denial of an "injunction" within section 1292(a) (1), Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80 (2d Cir.1961), cert. denied sub nom. Dawson v. Lummus Co., 368 U.S. 986, 82 S. Ct. 601, 7 L.Ed.2d 524 (1962), see Greenstein v. National Skirt & Sportswear Ass'n, Inc., 274 F.2d 430 (2d Cir. 1960) ; contra: A. & E. Plastik Pak Co., Inc. v. Monsanto Co., 396 F.2d 710 (9 Cir.1968) ; the nonappealability of orders granting or denying a stay of arbitration does not depend upon the old distinction between law and equity, and the order is not appealable even where the arbitration claim, as here, is a legal claim for damages. The reason for the different approach to stays of arbitration as compared to stays of other court proceedings is twofold: (1) appealability of a denial to stay arbitration would further delay the arbitration proceedings and thereby eliminate one of the primary purposes of arbitration, i. e., the speed of the proceedings; (2) arbitration differs from another court proceeding in the essential respect that arbitration would not produce an enforceable result without further judicial ac-

---

1. At the time of argument, there were at least two other suits in process between the two parties involved in this appeal, concerning the same transaction. One suit is pending in New York state court, and Schechter has initiated another suit in the federal district court.

tion. See e. g., New York Civil Practice Law and Rules §§ 7510 and 7514. In the light of these two distinctions, we have considered that section 1292(a)(1), allowing for appealability of some orders which although not final have serious, perhaps irreparable consequences, could not have been intended to include orders granting or denying stays of arbitration. See Lummus v. Commonwealth Oil Refining Co., *supra*. Accordingly, Judge Frankel's order is not the refusal of an "injunction" within the meaning of 28 U.S.C. § 1292(a)(1) and is not appealable.

Since we are constrained to dismiss the appeal, we do not rule on the merits. However, we suggest that the court give further consideration to whether, from the facts presented, it appears that the parties intended the arbitration clause to take precedence in the present situation. Admittedly, the arbitration clause was in the employment contract, and it is his rights under that contract that Schechter is demanding in the arbitration proceedings; yet the two contracts in this case are so interrelated that before determining Schechter's rights under the employment contract, the arbitrators will necessarily have to determine the validity of the purchase agreement. To do so will require considering the allegations by Continental of fraud and violation of Rule 10b–5 on the part of Schechter and Sea-Land, since the employment contract is related and subsidiary to the purchase contract, and the question of whether there was a violation of Rule 10b–5 will have to be determined in the arbitration proceedings prior to any interpretation of the employment contract. If the purchase contract is rescindable for fraud, the employment contract will fail also. This type of question concerning fraud within the meaning of Rule 10b–5 is properly litigated in the courts where a complete record is kept of the proceedings and findings and conclusions are made. It was for that reason that in both the 1933 and 1934 securities acts Congress provided that questions arising under those acts were not to be determined in arbitration proceedings (but rather in the courts) even if the contract between the parties contained an arbitration provision. Section 14 of the Securities Act of 1933, 15 U.S.C. § 77n, see Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc, see Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D.N.Y. 1961) and Maheu v. Reynolds & Co., 282 F.Supp. 423 (S.D.N.Y. 1967, 1968). If the arbitration clause had been in the stock purchase contract it would have been void and ineffective, as Judge Frankel pointed out, and we do not think, under the facts presented of the close interrelationship between the two contracts, that the clause being in the "separate" papers constituting the employment contract part of the total deal should make the result different. The fraud issues involved in this case are within the view of Rule 10b–5, and the threat to Schechter's employment arises out of questions concerning the validity of the stock sale out of which the employment arose. Where, as here, there may be later conflicting claims of lack of jurisdiction on the part of the arbitrator, on the one hand, and of a collateral estoppel effect following the arbitrator's decision on the fraud issues, on the other, see James L. Saphier Agency, Inc. v. Green, 190 F.Supp. 713 (S.D.N.Y.1961), aff'd 293 F.2d 769 (2d Cir. 1961); cf. Liquifuels, Inc. v. Hess Oil & Chemical Co., 281 F.Supp. 596 (S.D.N.Y.1968), the court should consider whether the better course would not be to stay the arbitration proceeding pending prompt federal litigation of the fraud issue (i.e., disposition of Continental's claims in this suit), with expedited trial.

In this and similar cases involving fraud questions under the securities acts of 1933 and 1934, where there is a strong federal policy in favor of determining stock fraud questions in the federal courts, see Wilko v. Swan, *supra*, arbitration of the subsidiary employment issues which will necessarily deter-

mine the fraud questions also, may well be stayed. However, this for the district court's determination, since the order denying such a stay is not appealable to this court under 28 U.S.C. §§ 1291 or 1292(a) (1), and we do not find the matter of such compelling importance as to invoke the mandamus power of the court.

Appeal dismissed.