**NEW ENGLAND POWER COMPANY,**
Plaintiff-Appellant,

v.

**ASIATIC PETROLEUM CORPORA-
TION,** Defendant-Appellee.

No. 71–1334.

United States Court of Appeals,
First Circuit.

Heard Jan. 4, 1972.

Decided Feb. 17, 1972.

Lane McGovern, Boston, Mass., with whom Ropes & Gray, Boston, Mass., was on brief, for appellant.

James D. St. Clair, Boston, Mass., with whom Richard L. Levine and Hale & Dorr, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This case, but not this opinion, involves the efforts of a major oil supplier, Asiatic Petroleum Corporation ("Asiatic") to exact, because of events allegedly beyond its control, increased prices from its customer, the New England Power Company ("New England"). Upon New England's resisting such increases, Asiatic sought to initiate arbitration. Although the contract between the parties contains a commercial arbitration clause which covers the subject matter of the present dispute, New England argues that the potential impact of oil price increases on consumers of electrical energy is charged with such "public significance" that the issue is not properly one for decision by arbitrators. Asiatic contends that arbitration is required by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

This appeal is from the district court's denial of New England's motion for a stay of arbitration and granting Asiatic's motion for a stay of court proceedings pending arbitration. We do not reach the merits of the district court's action, however, since New England has not poured enough oil to quiet the troubled waters of appellate jurisdiction.

■ Our jurisdiction of the present appeal depends initially on whether either order of the district court is "final" within the meaning of 28 U.S.C. § 1291. Although entered in proceedings still pending before the court, an order may be final and therefore appealable (1) if its substantial effect is to dispose of an important claim of right "separable from, and collateral to" rights asserted in the main cause of action which may be lost if appellate consideration is delayed for a decision on the whole case, Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546–547, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Swift & Co. Packers v. Compania Columbiana Del Caribe, 339 U.S. 684, 688–689, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), or (2) if immediate review of the order would settle issues "fundamental to the further conduct of the case", Gillespie v. United States Steel Corp., 379 U.S. 148, 154, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

■ The district court's suspension of court proceedings and its refusal to stay arbitration in the present case meet neither of these standards. No important right, other than the "right" to stay arbitration, will be irreparably lost by our declining to review the district court's action at this juncture. The issue sought to be raised here by New England, viz, whether considerations of public policy preclude a decision by arbitrators on the merits of its dispute with Asiatic, is not foreclosed from ultimate judicial determination by the district court's decision to allow the arbitration to proceed. 9 U.S.C. § 10(d); M.G.L. c. 251, §§ 10 and 12; cf. In re States Marine Corp. of Delaware, 127 F.Supp. 943, 944 (S.D.N.Y.1954). Nor will the district court's action "fundamentally" affect the further conduct of the case.

The only really adverse consequences of an erroneous decision not to stay the impending arbitration until a decision can be rendered on the issues raised in New England's complaint are the expense and irritation of securing what may be an unenforceable arbitration award. While we agree that these consequences, were they to occur, would indeed be unfortunate, they are not sufficiently serious to justify our departing from the long-standing federal rule against piecemeal review.[1] See, e. g., Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 451, 55 S.Ct. 313, 79 L.Ed. 583 (1935); Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 179, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Greater Continental Corp. v. Schechter, 422 F.2d 1100, 1102 (2d Cir. 1970).

New England contends that even if the district court has not taken final action affecting any important claim of right within the meaning of 28 U.S.C. § 1291, its refusal to stay arbitration is an interlocutory order refusing an application for an injunction and as such falls within the grant of jurisdiction conferred by 28 U.S.C. § 1292(a) (1).[2] The two courts of appeals which have directly confronted this contention have taken opposing positions. The Second Circuit has consistently adhered to the view that such requests do not amount to applications for an injunction within the meaning of the statute and are therefore not appealable. Greater Continental Corp. v. Schechter, supra; Greenstein v. National Skirt & Sportswear Ass'n, Inc., 274 F.2d 430 (2d Cir. 1960); Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, 269 F.2d 618 (2d Cir. 1959); Wilson Bros. v. Textile Workers Union, 224 F.2d 176 (2d Cir.), cert. denied, 350 U.S. 834, 76 S.Ct. 70, 100 L.

---

1. We now deem our contrary jurisdictional statement in Dickstein v. duPont, 1st Cir., 443 F.2d 783, 784 n. 1 (1971), to have been erroneous, although the merits of the appeal in that case were nevertheless properly reached since the appealability requirements of the Enelow-Ettelson rule were satisfied. See discussion infra.

2. 28 U.S.C. § 1292(a) (1) invests courts of appeals with jurisdiction to hear appeals from "[i]nterlocutory orders of the [federal] district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . . . ."

Ed. 745 (1955). In justifying this conclusion, the Second Circuit noted in Greater Continental Corp. v. Schechter that appellate consideration of a district court's refusal to stay impending arbitration would, by forcing a delay, destroy one of the primary advantages of arbitration, that is, the speed of the proceedings, and that such interference would be unwarranted since arbitration does not produce an enforceable result without further judicial action. *Id.* 422 F.2d at 1102–1103. In arriving at a contrary conclusion, the Ninth Circuit characterized a request that a court invoke its equity powers to stay proceedings in another forum as involving the "classic form of injunction". A. & E. Plastik Pak Co. v. Monsanto Co., 396 F. 2d 710, 713 (9th Cir. 1968).[3] *See also* Power Replacements, Inc. v. Air Preheater Co., 426 F.2d 980 (9th Cir. 1970).

Without cavilling at the correctness of the label, we are of the opinion that whether an injunction is "classic" or not does not resolve the question when strong countervailing policies are involved. It is one thing to hold, as we have, Lummus Co. v. Commonwealth Oil Refining Co., Inc., 280 F.2d 915, 917 (1st Cir.), cert. denied, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960), that an order enjoining arbitration is appealable, but quite another to hold that a refusal to so order may be immediately reviewed on motion of one of the parties. A decision to stay impending arbitration may well be an injunction in the "classic" sense since it effectively deprives at least one of the parties to the dispute of one of the principal objects for which he

has contracted—that is, a relatively expeditious and inexpensive preliminary resolution of any controversy.[4] See 9 Moore's Federal Practice ¶ 110.20[1] (2d ed. 1970). A refusal to stay arbitration, on the other hand, has no such potentially adverse impact on the ultimate rights of the parties. The effect of a refusal to intervene is either to permit arbitration to run its course, with the mutual—albeit reluctant—consent of the parties, or if one of the parties persists in refusing to submit to arbitration, to require the party favoring arbitration to move under 9 U.S.C. § 4 for a court order compelling the objecting party to go to arbitration.

This rejection of what has been called a "broad literal interpretation of 'injunction'", Lummus Co. v. Commonwealth Oil Refining Co., Inc., 297 F.2d 80, 86 (2d Cir. 1961), cert. denied *sub nom.* Dawson v. Lummus Co., 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), is amply supported by the history of 28 U.S.C. § 1292(a) (1). It has the additional advantages, moreover, of maximizing the possibility that the purposes sought to be furthered by the Arbitration Act, 9 U.S.C. § 1 et seq., will be realized in practice. As the Supreme Court stated in Baltimore Contractors, Inc. v. Bodinger, *supra*, 348 U.S. at 181, 75 S.Ct. 252, the provisions of § 1292(a) (1) allowing appeal from certain interlocutory orders was meant only as a limited exception to the long-standing federal commitment to the principle of finality and stemmed "from a developing need to permit litigants to effectually challenge interlocutory orders of serious,

---

3. In support of its holding that district court orders declining to stay arbitration are appealable under 28 U.S.C. § 1292 (a) (1), the Ninth Circuit has also twice argued that any other result would be anomalous since an order to stay court proceedings, entered in an equitable action, would be appealable under the Enelow-Ettelson rule discussed *infra*. A. & E. Plastik Pak Co. v. Monsanto Co., 396 F.2d 710, 713 n. 2 (9th Cir. 1968); Power Replacements, Inc. v. Air Preheater Co., 426 F.2d 980, 983 (9th Cir. 1970). Since an order staying court proceedings pend-

ing arbitration in an action at law would not be immediately appealable under the Enelow-Ettelson rule, however, the argument, so put, seems rather weak. As long as the Enelow-Ettelson rule has vitality, anomalous results will continue in this area of federal law regardless of our holding in the present case.

4. *Contra*, Lummus Co. v. Commonwealth Oil Refining Co., Inc., 297 F.2d 80, 86 (2d Cir. 1961) (dictum), cert. denied *sub nom.* Dawson v. Lummus Co., 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962).

perhaps irreparable, consequences." *Cf.* Switzerland Cheese Ass'n v. Horne's Mkt., 385 U.S. 23, 87 S.Ct. 193, 17 L. Ed.2d 23 (1966); see also 9 Moore's Federal Practice ¶¶ 110.16 and 110.20[1] (2d ed. 1970), for a short history of interlocutory appeals in federal practice. New England has simply failed to convince us that our refusal to accept an interlocutory appeal from the district court's order declining to stay arbitration would on balance have such "serious, perhaps irreparable, consequences", especially in light of the effect of such "preliminary skirmishing" on the congressional policies embodied in the Arbitration Act. 9 Moore's Federal Practice ¶ 110.20 [4.–1] (3), at 249 (2d ed. 1970).

▉▉ New England also argues that even if the district court's refusal of its application for a stay of arbitration is not appealable as a refusal of an injunction under 28 U.S.C. § 1292(a) (1), its order granting Asiatic's application for a stay of court proceedings pending arbitration is appealable as a grant of an injunction within the terms of that stat- ute. This argument must be measured against what is known as the Enelow-Ettelson rule, which allows an appeal from an adverse decision on a motion to stay court proceedings only (1) when the first cause of action filed could, prior to the merger of law and equity, have been maintained only at law and (2) the stay was sought to permit the prior determination of an equitable defense or counterclaim. Enelow v. New York Life Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); Ettelson v. Metropolitan Life Insurance Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942).[5]

▉▉ New England began the present action in the district court by filing a complaint seeking a declaration that the dispute between it and Asiatic should be determined by the courts rather than by arbitrators.[6] Since the complaint was filed in response to Asiatic's petition to the American Arbitration Association for the appointment of an arbitrator, two of the four requests for relief concern the impending arbitration. The basic and potentially dispositive re-

5. *See also* Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); City of Morgantown, West Virginia v. Royal Insurance Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949); Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935); Western Geophysical Co. of Amer. v. Bolt Associates, Inc., 440 F.2d 765 (2d Cir. 1971); Southeastern Enameling Corp. v. General Bronze Corp., 434 F.2d 330 (5th Cir. 1970); Chapman v. International Ladies' Garment Workers' Union, 401 F. 2d 626 (4th Cir. 1968); Travel Consultants, Inc. v. Travel Management Corp., 125 U.S.App.D.C. 108, 367 F.2d 334 (1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967); Alexander v. Pacific Maritime Ass'n, 332 F.2d 266 (9th Cir.), cert. denied, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964); Kirschner v. West Co., 300 F.2d 133 (3d Cir. 1962).

In four recent cases, we reached the merits of appeals from district court orders staying or refusing to stay litigation pending arbitration where the underlying causes of action were at law. In re Revenue Properties Litigation Cases, 451 F.2d 310 (1st Cir. 1971) (indemification); County of Middlesex v. Gevyn Construction Corp., 450 F.2d 53 (1st Cir. 1971) (damages for delay in construction contract); Dickstein v. duPont, 443 F.2d 783 (1st Cir. 1971) (breach of contract, prayer for damages of $200,000); Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968) (money damages).

6. *For classification purposes under the* Enelow-Ettelson rule, actions for declaratory judgments are treated as legal or equitable depending on the type of action that could ultimately have been brought in the absence of a statutory declaratory judgment remedy (28 U.S.C. §§ 2201–2202). Western Geophysical Co. of Amer. v. Bolt Associates, Inc., supra, 440 F.2d at 771; American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821, 824 (2d Cir. 1968); 9 Moore's Federal Practice ¶ 110.20 [3], at 243 (2d ed. 1970). The arbitration agreement interposed by Asiatic as a defense to New England's complaint is regarded as equitable for purposes of applying the Enelow-Ettelson rule. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., *supra* 293 U.S. at 452, 55 S.Ct. 313.

quest, however, was for judicial interpretation and enforcement of the contract.[7] Such a request calls for the court to invoke its equity powers, and as such is not an appealable interlocutory order under the Enelow-Ettelson rule. *See* 5 Moore's Federal Practice ¶¶ 38.21 and 38.22 (2d ed. 1971); F. James, Civil Procedure, § 8.2, at 341–42 (1965).

New England's attempt to escape this conclusion by arguing that its general prayer included a claim for damages by virtue of what it calls Asiatic's "anticipatory repudiation" of the supply contract is not persuasive. Asiatic has continued to supply oil to New England at the price originally agreed upon pending a final decision on the disputed provisions of the contract. We therefore doubt the substantiality of New England's claim of anticipatory repudiation and regard it as purely incidental to the basic claim for judicial interpretation and enforcement.[8] *See, e. g.,* Western Geophysical Co. of Amer. v. Bolt Associates, Inc., 440 F.2d 765, 771 (2d Cir. 1971); Chapman v. International Ladies' Garment Workers' Union, 401 F.2d 626, 628–629 (4th Cir. 1968); 9 Moore's Federal Practice ¶ 110.20[3], at 244 (2d ed. 1970).

New England has one more arrow in its quiver—treating the decision to stay court proceedings as if it were an order compelling arbitration. A district court's order entered on motion of one of the parties under 9 U.S.C. § 4 compelling arbitration is appealable as a final order under 28 U.S.C. § 1291. *See,*

*e. g.,* County of Middlesex v. Gevyn Construction Corp., 450 F.2d 53 (1st Cir. 1971); Standard Chlorine of Delaware, Inc. v. Leonard, 384 F.2d 304, 308 (2d Cir. 1967); cf. Goodall-Sanford, Inc. v. United Textile Workers, 353 U.S. 550, 551–552, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1953) (order directing arbitration under § 301(a) of the Taft-Hartley Act held appealable as a final order); *contra,* Blount Bros. Construction Co. v. Troitino, 127 U.S.App.D.C. 99, 381 F.2d 267 (1967).

In the present case, the district court has reserved decision on Asiatic's motion under Section 4 of the Arbitration Act for an order compelling New England to submit to arbitration. Because New England is the party in the position of attempting to enforce the terms of the supply contract as originally written, it may well not be within its power to force Asiatic, by refusing to submit to arbitration, to press the court for a decision on Asiatic's Section 4 motion. Asiatic has been relieved of the threat of court action until arbitration has taken place and may now refuse to deliver oil at the old price until New England either expresses a willingness to renegotiate prices or to engage in arbitration. As far as New England is concerned, then, the district court's decision to stay proceedings before it may have some of the same coercive effects as an affirmative decision on Asiatic's Section 4 motion.

Given this situation, New England contends that it would be incongruous indeed were we to hold the dis-

---

7. "3. That this Court declare the rights and legal relations of the parties to the subject matter here in controversy, and in particular, declare (a) that defendant is not entitled to rescind, terminate or cancel its contract with plaintiff or to be excused from further performance of its obligations thereunder, and (b) that defendant is not entitled to have the agreed contract prices raised by 'equitable modification' . . . ."

8. Because of our reading of City of Morgantown, West Virginia v. Royal Insurance Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949), we see no need to determine whether Asiatic's cause of action in the arbitration proceeding is legal or equitable. We decline to follow the reasoning of Travel Consultants, Inc. v. Travel Management Corp., *supra,* insofar as that case would seem to command the contrary. The holding in *Travel Consultants* is disputed in Blount Bros. Construction Co. v. Troitino, 127 U.S.App.D.C. 99, 381 F.2d 267 (1967), and more generally criticized in 9 Moore's Federal Practice ¶ 110.20 [3], at 242 n. 10 (2d ed. 1970).

trict court's order staying court proceedings non-appealable, while recognizing probable jurisdiction over the appeal were the district court to act on Asiatic's Section 4 motion. But while we are as sensitive as New England to the medieval if not Byzantine peculiarities of this area of the law, *see, e. g.*, Hilti, Inc. v. Oldach, 392 F.2d 368, 369 n. 1 (1st Cir. 1968), it seems to us that New England's arguments are misdirected. The Supreme Court has clearly set out the prerequisites to appealability as contained in the relevant statutes, and has itself clearly recognized the presence of "elements of fiction" and "incongruity" in such prerequisites. Baltimore Contractors, Inc. v. Bodinger, *supra*, 348 U. S. at 184, 75 S.Ct. 249. For various reasons, however, the Court has chosen to adhere to its long-standing view of those prerequisites *until Congress has seen fit* to amend the underlying jurisdictional statutes. Id. at 184–185, 75 S.Ct. 249. We are bound by that decision.

The appeal is dismissed.