April 28, 1994 UNITED STATES COURT OF APPEALS
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1762

TEJIDOS DE COAMO, INC., ETC.,

Plaintiff, Appellee,

v.

INTERNATIONAL LADIES' GARMENT WORKERS' UNION, ET AL.,

Defendants, Appellants.

ERRATA SHEET

The opinion of this Court issued on April 25, 1994, is
amended as follows:

On page 6, footnote 3, line 4, replace "(7th Cir. 1984).
See" with "(7th Cir. 1984); see."

On page 13, line 14, add a comma after the word "Board."

On page 13, line 14, add the word "the" after the word
"and."

On page 14, line 17, replace "Further, having" with
"Having."

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1762

TEJIDOS DE COAMO, INC., ETC.,

Plaintiff, Appellee,

v.

INTERNATIONAL LADIES' GARMENT WORKERS' UNION, ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

Ira Jay Katz with whom Rosa Garcia Badillo, Nicolas Delgado,

Reinaldo Perez-Ramirez, and Jose E. Carreras-Rovira were on brief for

appellants.
Vicente J. Antonetti, Howard Pravda, Goldman, Antonetti, Cordova

& Axtmayer, R. Carl Cannon, Frank B. Shuster and Constangy, Brooks &

Smith were on brief for appellee.

April 25, 1994

BOUDIN, Circuit Judge. On January 12, 1993, Teijidos de

Coamo, Inc. ("the Company") filed this suit in district court

against the International Ladies' Garment Workers' Union and

one of its locals (collectively, "the Unions"). The

complaint, premised on section 301 of the Taft-Hartley Act,

29 U.S.C. 185, sought a declaration that no contract

existed between the Company and the Unions; and the Company

also requested a stay of pending arbitration proceedings.

The district court granted a stay pendente lite, and the

Unions appealed. We vacate the stay and remand for further

proceedings.

I.

Well before the current law suit, the Company and the

Unions were parties to a collective bargaining agreement

covering the Company's knit, cut, and sew employees at

Barranquitas, Puerto Rico. That contract expired on February

29, 1992. Thereafter, on April 17, 1992, the parties entered

into a "summary of agreement" looking toward a new contract.

It is enough for present purposes to say that the Company

believes that no effective contract was adopted at that time

or thereafter; the Unions, by contrast, take the view that

(based on past practice and the summary of agreement) a new

contract did go into effect on or after April 17, 1992,

retroactive to February 1, 1992, and is currently in force.

-2-

On November 5, 1992, the Unions requested arbitration,

before arbitrator David Helfeld, of a dispute concerning

access for union representatives to the Company's

Barranquitas mill. The Company agreed; its explanation for

agreeing is that the contract that expired on February 29,

1992, had provided for arbitration of disputes arising under

that agreement and that the access dispute dated back to the

period before the contract expired. The arbitrator scheduled

a hearing for December 7, 1992.

On or about November 30, 1992, the Unions learned that

some of the Company's employees desired to decertify the

Unions as the representative of the Barranquitas workers and

were preparing to petition the National Labor Relations Board

for a new election. In early December 1992 there was a

strike and certain employees were disciplined by the Company

for what it said was strike and picket-line misconduct. The

Unions then sought arbitration before arbitrator Helfeld of

these disciplinary disputes. The Company objected that there

was no contract and thus no basis for arbitration of new

disputes arising after February 29, 1992.

The arbitrator held a hearing on December 30, 1992, and

advised the parties that he would determine whether he had

authority to proceed. The Company then filed the present

lawsuit on January 12, 1993; the complaint sought, as already

noted, a judicial declaration that no contract existed after

-3-

February 29, 1992, a determination that would strip the

arbitrator of power at least as to disputes arising after

that date. The Company also sought a judicial stay of the

arbitration while the contract issue was being determined by

the court.

On January 20, 1993, a magistrate judge denied a stay of

the arbitration proceedings. On January 27, 1993, the

arbitrator issued a decision finding that a contract

currently existed between the Company and the Unions. He

proposed to schedule additional hearings on the merits of the

disputes. The Company appealed the magistrate judge's

decision and also asked the district court to stay further

arbitration proceedings pending the court's decision as to

whether the arbitrator had authority to proceed.

On June 21, 1993, the district court issued a stay

pendente lite of arbitration as to grievances alleged to have

arisen after February 29, 1992. The Unions then filed the

present appeal to this court. So far as we have been

advised, the district court has not yet determined the merits

of the dispute and we are concerned only with the Unions'

claim that interim relief--reflected in the stay of

arbitration--was improperly granted.

II.

On this appeal, the first question presented is whether

we have jurisdiction to review the stay of arbitration

-4-

granted by the district court as either a final order or an

appealable interlocutory injunction. The Company has raised

this issue by motion to dismiss the appeal. Clearly, the

district court's stay is not a final disposition of the case.

But we agree with the Unions that it is an appealable

interlocutory injunction.

The governing statute, 28 U.S.C. 1292(a)(1), provides

for immediate appeals of interlocutory orders of district

courts "granting . . . [or] refusing . . . injunctions." An

order staying an arbitration proceedings is in substance, and

often in form, a directive to the parties to cease the

arbitration. It is thus injunctive in character, A. & E.

Plastik Pak Co. v. Monsanto Co., 396 F.2d 710, 713 (9th Cir.

1968), and one might think that there could be little doubt

that such an order was immediately appealable.

The doubts, such as they are, stem from two facts.

First, several circuits, including this one, have held that

an order refusing to stay an arbitration proceeding is not

immediately appealable under 28 U.S.C. 1292(a)(1).1

Second, in a series of decisions beginning with one by Judge

Friendly in the Lummus case,2 the Second Circuit has gone

1E.g., New England Power Co. v. Asiatic Petroleum Corp.,

456 F.2d 183, 185 (1st Cir. 1972); Stateside Machinery Co. v.

Alperin, 526 F.2d 480, 482-84 (3d Cir. 1975).

2Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80

(2d Cir. 1961), cert. denied, 368 U.S. 986 (1962). Later

Second Circuit cases are listed in 16 Wright, Miller, Cooper

-5-

further and held that an order staying an arbitration

proceedings also is not immediately appealable under 28

U.S.C. 1292. The Company argues that the Second Circuit's

approach is supported by considerations of symmetry and

policy.

The Second Circuit appears to stand alone. At least six

other circuits treat an order staying arbitration as an

injunction that is immediately appealable.3 Our own

decision in Societe Generale v. Raytheon European Management

and Systems Co., 643 F.2d 863 (1st Cir. 1981), tenuously

distinguished by the Company, leans in the direction of the

majority rule. A 1988 amendment to the Federal Arbitration

Act, now 9 U.S.C. 16(a)(2)--although perhaps formally

inapplicable to this case--expresses a congressional policy

in favor of immediate appeal of "an interlocutory order

granting . . . an injunction against an arbitration that is

subject to this title."4

& Gressman, Federal Practice and Procedure 3923, at 60

(1977).

3The circuits are the Fifth, Sixth, Seventh, Eighth,
Ninth, Tenth, Eleventh, and the District of Columbia. E.g.,

Timberlake v. Oppenheimer & Co., Inc., 729 F.2d 515, 518-19

(7th Cir. 1984); see 16 Wright, supra, 3923 (1977 and 1994

Supp.).

4The arbitration title broadly covers arbitration
clauses in maritime agreements or agreements evidencing
transactions involving interstate commerce, 9 U.S.C. 2, but
it excludes "contracts of employment" from its scope. Id.

1; see Paperworkers Co. v. Misco, 484 U.S. 29, 40 n.9 (1987).

-6-

Judge Friendly's views are never lightly to be

disregarded. However, his main concern in Lummus was with

"the baneful effect" of permitting appeals from "order[s]

refusing a stay of arbitration." 297 F.2d at 86. As he

explained, immediate appeals from such orders would

compromise the speedy, informal disposition at which

arbitration agreements aim. Id. Judge Friendly then

concluded that, as a matter of symmetry, "if an order

refusing a stay" is deemed not to be an injunction, then "an

order granting such a stay" also cannot be so classified.

Id.

Courts since Lummas have been willing to entertain just

such a distinction between orders granting stays of

arbitration and orders denying them. Perhaps the best way to

explain this outcome is to say that both orders constitute

injunctions but that the policy favoring arbitration

precludes an immediate appeal where the district court has

refused a stay. New England Power Co., supra, 456 F.2d at

186. After all, treating procedure as a special concern of

the courts, judges have not hesitated to embroider the

Judicial Code with other judge-made rules on appealability.

E.g., Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541

(1949).

Accordingly we believe that an order declining to stay

an arbitration is an injunction but for policy reasons is not

-7-

immediately reviewable by appeal, although of course

fundamental objections to the arbitration are preserved for

later judicial review if an award is made. By contrast, an

order staying arbitration is an injunction that is

immediately appealable under 28 U.S.C. 1292(a)(1), even

where section 16 of the Federal Arbitration Act does not

apply to the particular order. We thus have jurisdiction to

review the district court's stay order in this case, and turn

now to the question whether the district court had authority

to grant such a stay.

III.

The Unions claim that the stay granted by the district

court was an injunction issued in violation of the stringent

requirements of section 7 of the Norris-LaGuardia Act, 29

U.S.C. 107. In the alternative, the Union says that the

stay was unjustified even under the less stringent equitable

standards that govern ordinary injunctions. For reasons

already indicated we agree that the stay comprised an

injunction. The next, and more difficult, question is

whether section 7 supplies the yardstick.

Section 7 is one of a set of interlocking provisions of

the Norris-LaGuardia Act designed to curb the use of federal

court injunctions in cases "involving or growing out of a

-8-

labor dispute."5 Under section 7, no injunction may be

issued in such a case except after an evidentiary hearing,

specified findings by the court, and certain other steps

including a bond. The required findings include findings

that absent an injunction "substantial and irreparable injury

to complainant's property will follow" and that public

officers "are unable or unwilling to furnish adequate

protection." Id.

The threshold question, where section 7 is invoked, is

whether the case derives from a "labor dispute," a critical

phrase that provides the outer boundary for much of the

Norris-LaGuardia Act. On the face of the matter, a dispute

between an employer and its unions involving arbitration,

plant access, discipline of employees, and the existence vel

non of a collective bargaining agreement does comprise a

labor dispute, taking that phrase literally. The pertinent

definitions in the statute are broad, see section 13, 29

5Section 1 of the statute says that federal courts have
no jurisdiction to issue temporary restraining orders or
injunctions in such cases except in "strict conformity" with
the statute; section 4 prohibits any temporary restraining
order or injunction against certain acts (e.g., refusing to

work) regardless of circumstances; and section 7 imposes
severe conditions on the grant of injunctive relief where it
is not barred outright by section 4. 29 U.S.C. 101, 104,
107.

-9-

U.S.C. 113, and have been broadly construed by the courts

including the Supreme Court.6

While the Supreme Court has been unwilling to narrow the

definition of "labor dispute," it has carved out a quite

important set of exceptions to the Norris-LaGuardia Act in

relation to arbitration. Following the Taft-Hartley Act's

creation of contract suits under section 301, the Supreme

Court upheld an injunction requiring an employer to arbitrate

a dispute, as the employer and union had agreed. Textile

Workers Union v. Lincoln Mills, 353 U.S. 448 (1957). What is

pertinent here is not the decision's famous holding that

federal law governs such labor contracts; it is the further

conclusion that section 7 did not apply to the injunction:

The congressional policy in favor of the
enforcement of agreements to arbitrate grievance
disputes being clear, there is no reason to submit
them to the requirements of 7 of the Norris-
LaGuardia Act.

Id. at 458-59 (footnote omitted).

Thereafter, in Boys Markets, Inc. v. Retail Clerks

Union, 398 U.S. 235 (1970), the Court took the even more

extreme step of approving a federal court injunction to

enjoin a strike that the union was conducting despite a

contract promising to arbitrate and to refrain from strikes.

6Burlington Northern R.R. v. Brotherhood of Maintenance

of Way Employees, 481 U.S. 429, 441-42 (1987); International

Ass'n of Machinists v. Eastern Air Lines, 826 F.2d 1141, 1145

(1st Cir. 1987).

-10-

Section 7 aside, this injunction required the Court to

override section 4's flat prohibition on federal injunctions

against strikes. 29 U.S.C. 104. Nevertheless, Justice

Brennan declared that "the unavailability of equitable relief

in the arbitration context" would frustrate Congress' policy

"favoring the voluntary establishment of a mechanism for the

peaceful resolution of labor disputes . . . ." 398 U.S. at

253.

The twin themes in these cases are the desirability of

enforcing labor contracts and the desirability of

arbitration. At least where these objectives coincide, as in

Lincoln Mills and Boys Markets, we are told that the Norris-

LaGuardia Act's "seemingly absolute terms" can be made to

yield to "the subsequently enacted provisions of 301(a) . .

. and the purposes of arbitration." Boys Markets, supra, 398

U.S. at 249-50. We do not think that in this case injunctive

relief can be justified on either ground--to enforce a

contract or support arbitration--let alone both.

It requires no argument to show that the stay of

arbitration granted in this case is not a step fostering

arbitration. Nor can the stay fairly be described as one to

enforce a collective bargaining agreement. The Company's

position, after all, is that there is no such agreement at

all. The Company is seeking not to enforce a contract but to

obtain a judicial determination that none exists. This is a

-11-

permissible aim but it is rather far from the circumstances

of Lincoln Mills and Boys Market.

The Company's argument for bypassing section 7 is not

without some force. It points out that whatever the strength

of the policy favoring arbitration of labor disputes, the

obligation to arbitrate remains a creature of contract.

United Steelworkers of America v. Warrior & Gulf Nav. Co.,

363 U.S. 574, 582 (1960). Thus, there is no obligation to

arbitrate if the parties did not agree to do so. Id. A

fortiori there is no obligation to arbitrate if the parties

did not agree to anything, as the Company claims here.

Indeed, in AT&T Technologies, Inc. v. Communications Workers,

475 U.S. 643 (1986), the Supreme Court held that a court

cannot order arbitration without a judicial finding that

there is an agreement providing for it.

But AT&T Technologies, although heavily stressed by the

Company, does not directly govern our case. Here the

arbitration clause invoked by the Unions does not require a

court order: an arbitrator being already designated under

the alleged contract--that is, the prior contract that the

Unions claim to have been extended--the Unions could begin

the process without cooperation from the Company or aid from

the courts. It is the Company that has taken the offensive

and sought to preempt the arbitration. Nothing in AT&T

Technologies addresses the question whether section 7 applies

-12-

to injunctive relief when an employer seeks to preempt

arbitration.

Taking a very broad view, one could argue that the

Lincoln Mills policy of issuing injunctions to enforce labor

contracts should entail an equal willingness to help parties

avoid spurious claims that a contract exists. It might also

be argued that, despite the Norris-LaGuardia Act's sweeping

language, the primary concerns that it had with labor

injunctions involved conduct such as lawful strikes, peaceful

picketing and union organizing which are very remote from the

conduct--a disputed arbitration proceeding--sought to be

stayed in this case. These are not frivolous arguments.

On the other hand, the judicial virtues include

respecting statutory language, and section 7 seems on its

face to apply to our case. The Lincoln Mills and Boys

Markets cases are distinguishable because they involved

affirmative enforcement of collective bargaining contracts in

support of arbitration. Also, what law can be found in the

circuits may lean slightly in favor of the view that section

7 does apply here: the Ninth Circuit has so held, as did the

Third (though by a two-to-one vote); and the Second Circuit

cases that look in the opposite direction do not directly

discuss our issue.7

7Compare Camping Constr. Co. v. District Council of Iron

Workers, 915 F.2d 1333 (9th Cir. 1990) (no stay), and Lukens

Steel Co. v. United Steelworkers of America, 989 F.2d 668 (3d

-13-

On balance, we are disposed to hold that section 7 does

govern a suit to enjoin a labor arbitration--unless and until

the Supreme Court says otherwise. Carving out new exceptions

to the Norris-LaGuardia Act, or markedly extending old ones,

is primarily a matter for the Supreme Court. We think such a

step is entirely possible; but we do not think it so certain

that we should anticipate it. Modern labor law, after all,

is largely a construct of Congress, the Labor Board, and the

Supreme Court. The edifice does not need another architect.

IV.

To say that section 7 applies is not the end of the

matter. The central findings and procedures required for an

injunction under section 7 differ from those required for an

ordinary injunction,8 but only by degree and in detail. The

most important findings required by and peculiar to section 7

are that "unlawful acts" be threatened, that "substantial and

irreparable injury to complainant's property" will follow

absent an injunction, and that "public officers" "are unable

Cir. 1993) (same by a divided court), with Diamond Glass

Corp. v. Glass Warehouse Workers and Paint Handlers Local

Union 206, 682 F.2d 301 (2d Cir. 1982) (arbitration enjoined

without discussing section 7).

8The almost universal considerations in granting a
preliminary injunction are a (1) a likelihood of success on
the merits, (2) irreparable injury to the moving party, (3)
outweighing harm to the opponent, and (4) compatibility of
the injunction with the public interest.

-14-

or unwilling to furnish adequate protection" to the

property.9

Based on these requirements, especially the reference

to public officers, a decent argument could be made that

section 7 precludes any injunctive relief in a labor dispute

except where essential to prevent damage to physical property

caused by violent acts. That reading, however, goes slightly

beyond the precise words of the statute. Further, there

would be some tension between such a view of section 7 and

the Supreme Court's willingness to uphold injunctions in aid

of contractually promised arbitration (Lincoln Mills) and

even against peaceful strikes (Boys Markets).

Having given the term "labor disputes" a broad reading,

we see good reason to preserve at least the potential for

injunctive relief where unlawful (but non-violent) acts

threaten to cause "substantial and irreparable injury" to

some property-like interest (other than physical security).

There is even legislative history in the Norris-LaGuardia Act

to the effect that Congress did not mean to preclude

injunctive relief against "unlawful acts or acts of fraud or

9Section 7 also requires findings that the balance of
harms as to each element of the injunction be in favor of the
complainant and that complainant lack an adequate remedy at
law; but these are requirements that normally apply to any
injunction.

-15-

violence."10 If the balance of harms and irreparable

injury requirements are taken seriously, little danger exists

of promiscuous injunctions under section 7.

This danger is further reduced by two other

considerations. First, no matter what threats or harms are

presented, section 4--except as limited by the Supreme court-

-creates an unqualified "no injunction" zone for the core

conduct of striking, organizing in unions, and picketing.

Second, where the conduct falls outside that zone, the

substantive findings required by section 7 are backed by

procedural requirements that go beyond those of ordinary

injunctions (e.g., an evidentiary hearing and a bond for

costs and attorney's fees).

In this case, we do not think that either the findings

or the procedural requirements of section 7 were satisfied.

The district court may have assimilated a stay of arbitration

to a stay of a phase of its own proceedings, for which no

findings of any kind would be required. But despite some

similarities, the stay of arbitration is a coercive order

directed not at the court's own proceedings but at the out-

of-court activities of parties before the court. That, in

fact, is why the stay is an injunction appealable under 28

U.S.C. 1292(a).

10S. Rep. No. 163, 72d Cong., 1st Sess. 11 (1932)
(emphasis added); see Grace Co. v. Williams, 96 F.2d 478, 481

(8th Cir. 1938), recounting the legislative history.

-16-

Here, starting with procedure, the district court

apparently omitted the requirement that no injunction be

granted except "after hearing the testimony of witnesses in

open court (with the opportunity for cross-examination),"

section 7; nor were there separate formal findings of fact

covering the issues for which section 7 requires such

findings;11 nor does it appear that bond was filed to cover

damages including attorney's fees, as section 7 also

requires. There may be cases where one or another of these

procedural requirements is waived or its omission is

manifestly harmless; but the lack of substantive findings

cannot be so easily ignored.

Turning to substance, we do not think that it is

apparent how the lack of an injunction threatened the Company

with substantial and irreparable injury. In this court, the

only claim made by the Company under this head is that the

arbitration proceedings would be used by the Unions "as

campaign propaganda in a decertification election." This

assertion is not explained in the brief, and it is scarcely

11Section 7 requires five findings. The first four are
that unlawful acts are threatened, that substantial and
irreparable injury will follow, that the balance of harm on
each element of relief favors the complainant, and that
complainant has no adequate remedy at law. The fifth
finding, that public officers are unable or unwilling to
furnish protection, is (as we read the statute) irrelevant
where the harm is not of a kind that the police ordinarily
prevent.

-17-

self-evident that the arbitration proceedings would or would

even be likely to alter the election results.

If the concern is with relief that the arbitrator might

order, the short answer is that the award is not self-

executing. A valid objection to jurisdiction would be

presented to and decided by the court before the award was

implemented. As for any propaganda benefit accruing to the

Unions from the existence of the arbitration or even the

arbitrator's findings, the Company is no less free to

publicize its own claim that the arbitration is a nullity,

pointing to its declaratory judgment suit as evidence that

the challenge is a serious one.

In its district court papers the Company argued that it

needed a stay to forestall a hopeless predicament: either

participate in the arbitration "and risk waiving its right to

judicial determination of the issue of substantive

arbitrability" or decline to participate and be bound by the

award if the arbitrator is later held to have jurisdiction.

Not surprisingly, no authority was cited for the suggestion

that the Company would waive an explicitly asserted

jurisdictional objection by defending on the merits. The

suggestion is mistaken. E.g., IAM Lodge 1777 v. Garsteel,

Inc., 900 F.2d 1005, 1008-10 (9th Cir.), cert. denied, 111 S.

Ct. 143 (1990).

-18-

It is true that participating would cause one form of

loss, namely, the time and expense of litigation before the

arbitrator. But courts have ordinarily not deemed litigation

expense to be substantial and irreparable injury warranting

an injunction, Renegotiation Board v. Bannercraft Clothing

Co., 415 U.S. 1, 24 (1974), USM Corp. v. GKN Fasteners, Ltd.,

574 F.2d 17, 20 (1st Cir. 1978), and perhaps in deference to

such decisions the Company does not argue to the contrary in

this court. If the Bannercraft generalization may have some

exceptions, nothing here makes this case appear exceptional.

In sum, so far as appears from this record, there is no

substantial and irreparable injury--or at least injury of a

kind that courts recognize in injunction cases. Under

ordinary standards for injunctive relief, irreparable injury

is nominally required but courts are often generous where the

complainant's claim on the merits is very strong or

unanswerable. Under section 7, however, there is no such

generosity. Absent a supported finding of "substantial and

irreparable injury," the stay of arbitration cannot stand.

V.

This case is not over. The Company's complaint sought a

declaration that there was no collective bargaining agreement

in force after February 29, 1992, and so no obligation to

arbitrate disputes arising after that date. Although section

301 actions are ordinarily brought to enforce contracts, the

-19-

Declaratory Judgment Act, 28 U.S.C. 2201-02, permits the

declaration of rights about which a real controversy exists,

and the Unions have not disputed the district court's

authority to grant declaratory relief. Nor does section 7

pose any barrier to such a declaration; it is directed only

against injunctions. See, e.g., Wilkes-Barre Publishing Co.

v. Newspaper Guild of Wilkes-Barr, Local 120, 647 F.2d 372,

379 (3d Cir. 1981), cert. denied, 454 U.S. 1143 (1982).

If this seems an eccentric limitation on a useful remedy

now customarily available to litigants, the short answer is

that the Norris-LaGuardia Act reflects a unique historical

experience. See Frankfurter & Greene, The Labor Injunction

(1930). Perceived judicial abuses gave rise to severe

restrictions on federal court authority; and the

restrictions, being statutory, persist even though the

climate that led to abuses has altered. Courts have assumed

a lot of authority in recent years, but the authority to

repeal statutes still belongs to Congress.

The stay of arbitration granted by the district court is

vacated and the case is remanded for further proceedings on

the request for declaratory relief.

-20-