**480**

STATESIDE MACHINERY COMPANY, LTD., a corporation organized under the laws of Great Britain, Petitioner,

v.

Joel M. ALPERIN, Respondent,

v.

Michael H. SHERIDAN, United States District Judge for the Middle District of Pennsylvania, Nominal Respondent.

STATESIDE MACHINERY COMPANY, LTD., a corporation organized under the laws of Great Britain, Appellant,

v.

Joel M. ALPERIN.

Nos. 75–1216 and 75–1300.

United States Court of Appeals, Third Circuit.

Submitted Oct. 28, 1975.

Decided Dec. 1, 1975.

David H. Hammer, Steven E. Pollan, Passaic, N. J., for appellant and petitioner.

Norman Harris, Paul A. Barrett, Nogi, O'Malley & Harris, Scranton, Pa., for Joel M. Alperin.

Before GIBBONS, BIGGS and WEIS, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

We have before us in No. 75–1216 a petition by Stateside Machinery Company, Ltd., a corporation of Great Britain (Stateside), for a writ of mandamus, and in No. 75–1300 an appeal by Stateside. The nominal respondent to the mandamus is a judge of the Middle District of Pennsylvania. The actual respondent, and the appellee in the appeal, is Joel Alperin. Both the petition for mandamus and the appeal seek to prevent completion of a pending arbitration proceeding. Alperin filed a motion to dismiss the appeal for lack of jurisdiction, which has been referred to this panel. Another

panel denied relief pending appeal and ordered that the mandamus petition and the appeal be consolidated. Thus we must determine (1) whether the district court made an order which is appealable, (2) if so, whether the court erred, and (3) if the order is not appealable whether mandamus relief is appropriate.

## I. THE PROCEDURAL POSTURE

The underlying dispute, which has already engaged the talents of judges on both sides of the Atlantic Ocean, grows out of a September 8, 1973 contract by which Stateside agreed to purchase from Alperin "all foreign rights of the Triple A Trouser Mfg. Company, Inc., Bad Loop Detector owned by Joel M. Alperin outside the continental United States" for $50,000. Payment was to be by means of a $2500 pre-contractual credit, a $7500 down-payment upon execution of the agreement, and three equal installments of $16,161. One clause of the contract provided:

> "This agreement here will be considered binding notwithstanding other agreements and in case of any unresolved issues will be subject to binding arbitration by the American Board of Arbitration."

Stateside delivered its check for $7500 to Alperin on September 8. Shortly thereafter Stateside's representative observed the bad loop detector [1] in action and concluded that the company had been defrauded by misrepresentations regarding its performance. Stateside stopped payment on its September 8 check. On April 30, 1974 Alperin, believing Stateside to be in breach of contract, filed a demand for binding arbitration with the American Board of Arbitration. He also sued Stateside on the check in the High Court of Justice, Queen's Bench Division. According to the affidavits on file it is the law of Great Britain that fraudulent inducement is not a defense to the action on a check. Alperin obtained a judgment on July 29, 1974.

In resisting the British lawsuit Stateside filed an affidavit in the Queen's Bench Division averring that it had submitted the issue of fraudulent inducement to arbitration. The court provided in the judgment that it would not be entered before September 10, 1974. The purpose of delay, apparently, was to permit Stateside to submit the claim to arbitration and on the basis of the award have the judgment vacated. No steps were taken to complete the arbitration which Alperin had demanded, and on September 10, 1974 the British judgment became final. Meanwhile, the American Arbitration Association was in touch with David H. Hammer, Esq., attorney for Stateside. On September 16, 1974 he wrote to the Association "my clients will be available for a hearing in this matter on December 18, 1974. Please advise." Thereafter the date for commencement of the arbitration was changed to December 11, 1974.

Although as late as October 22, 1974 Stateside, in an effort to have the British judgment set aside or stayed, represented that it was submitting the dispute to arbitration, on November 4, 1974 it filed a complaint in the Middle District of Pennsylvania. Defendant Alperin moved for a stay of the district court action pending arbitration. Stateside filed a cross-motion for an order enjoining the arbitration proceedings, which were still scheduled for December 11. The district court declined to issue a temporary restraining order halting the arbitration, which went forward as contemplated. On January 21, 1975 the district court filed a memorandum, setting forth findings of fact and conclusions of law, in which it denied Stateside's motion for a preliminary injunction prohibiting arbitration, but did not rule on Alperin's motion to stay the district court action. Thus the only order actually entered by the district court was an

---

1. A bad loop detector examines belt loops and detects imperfections before they are sewn on to the trousers.

order denying Stateside's motion for a preliminary injunction staying the arbitration proceeding.[2] The arbitration hearings have since been concluded, but so far as the record discloses no decision has been rendered by the arbitration panel.

## II.  THE DISTRICT COURT DECISION

Stateside contends that the contract was induced by fraud, and that this fraud vitiates the arbitration clause, which in any event is not broad enough to encompass such a claim. Alperin, relying on *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) and *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission,* 387 F.2d 768 (3d Cir. 1967), contends that the issue of fraud in the inducement is, under the arbitration clause quoted above, a matter for the arbitrators. These cases hold that only where a claim of fraud in the inducement goes specifically to the arbitration clause itself rather than to the contract as a whole may the court substitute its adjudication of a fraud claim for that of the arbitrators. Without deciding the matter finally, the district court held that Stateside had not met its burden of showing a likelihood that it would succeed on the merits in relating the alleged fraud specifically to the arbitration clause. On this ground it

declined to issue a preliminary injunction.

## III.  THE MOTION TO DISMISS THE APPEAL

### A.  Appealability of the denial of a preliminary stay of arbitration.

█ If the order refusing to stay arbitration is an appealable order, it is appealable not as a final order under 28 U.S.C. § 1291, but as an interlocutory order refusing an injunction. 28 U.S.C. § 1292(a)(1). The denial of a motion for a preliminary injunction against further proceedings in an arbitration would seem at first blush to fall within the literal terms of § 1292(a)(1). But literalism has not been the approved canon of construction for the interlocutory appeals statute. Rather, the courts have looked to the presumed purpose of the 1891 exception[3] to the historical rule[4] prohibiting appeals from non-final judgments, and have classified as injunctions within the meaning of § 1292(a)(1) those interlocutory orders "of serious, perhaps irreparable consequence." *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955). The literal characterization of an order as an injunction only begins the inquiry into appealability.

In a series of cases the Second Circuit has held that the denial of a motion to stay arbitration is not the equivalent of a denial of an injunction for purposes of § 1292(a)(1).[5] The First Circuit has

---

**2.**  Judge Sheridan expressly confined his holding to a ruling on Stateside's motion for a preliminary injunction against the arbitration proceeding. He explicitly retained jurisdiction over Alperin's motion to stay judicial proceedings.

**3.**  The Act of Congress which gave birth to the circuit courts of appeals also first made federal courts competent to review interlocutory orders of the district courts. Section 7 of the Act of March 3, 1891, ch. 517, 26 Stat. 828, authorized the courts of appeals to review a small class of non-final orders granting or continuing an injunction. This narrow class of appealable orders was expanded in 1895 to include orders refusing, dissolving, or refusing to dissolve injunctions. Act of Feb. 18, 1895,

ch. 96, 28 Stat. 666–67. These 1895 amendments were repealed five years later, Act of June 6, 1900, ch. 803, 31 Stat. 660, but were reinstated in 1925, when Congress authorized interlocutory review of orders modifying and refusing to modify injunctions. Act of Feb. 13, 1925, ch. 229, § 129, 43 Stat. 937. As amended in 1925, the interlocutory appeals statute closely resembled § 1292(a)(1).

**4.**  The rule traces back to § 22 of the Judiciary Act of 1789, 1 Stat. 84, the ancestor of the present § 1291.

**5.**  *E. g., Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1102 (2d Cir. 1970); *Greenstein v. National Skirt & Sportswear Assn., Inc.,* 274 F.2d 430 (2d Cir. 1960) (per curiam). The Second Circuit has also held that an order

ruled likewise.[6] The reasoning adopted by these courts [7] is that permitting the arbitration to proceed is not likely to have "serious, perhaps irreparable consequences" because arbitration awards are not self-executing. 9 U.S.C. § 9. If arbitration was improper, presumably the court will not enforce any award. Thus the policy behind the enactment of § 1292(a)(1) is not implicated. Construing that statute as inapplicable to the denial of a motion to stay arbitration, moreover, works an accommodation between it and the purpose sought to be favored by the United States Arbitration Act, 9 U.S.C. §§ 1–14.

The Ninth Circuit has reached a position contrary to that of the First and Second Circuits. It reasons that a stay of arbitration is the exercise of the court's equitable power to interfere with proceedings in another forum, a classic form of injunctive relief. Therefore, a denial of such a stay must be a denial of an injunction. It reinforces that conclusion by reference to the *Enelow-Ettelson* rule [8] governing the appealability of orders staying the court's own proceedings in favor of arbitration.[9]

It is certainly anomalous that a suit to compel arbitration may result in an appealable final judgment,[10] while a motion to stay a legal action pending arbitration results in an interlocutory order appealable as the grant or denial of an injunction [11] and a motion to stay an equitable action results in an interlocutory and unappealable order.[12]

Some of these anomalies are the product of Supreme Court precedents which bind this court. But the Supreme Court has not dealt specifically with the appealability of orders granting or denying motions to stay arbitration. Thus we are free to interpret § 1292(a)(1) as applied to such orders in the light of our understanding of the policy favoring interlocutory appeals in some cases.

We think that when applied to orders denying a motion to stay arbitration the reasoning of the First and Second Circuits has more to commend it. There is no question but that such a motion seeks what is in form an injunction. On the other hand, the harm which may result from denial of the motion hardly seems irreparable. Any duty to arbi-

---

granting a stay of arbitration is not an appealable injunction. *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 84–86 (2d Cir. 1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962).

6. *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183 (1st Cir. 1972). The First Circuit, contrary to the position of the Second Circuit, has implicitly held that an order granting a stay of arbitration is appealable under § 1292(a)(1). *See Lummus Co. v. Commonwealth Oil Refining Co.,* 280 F.2d 915 (1st Cir.), *cert. denied,* 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960); *New England Power Co. v. Asiatic Petroleum Corp., supra* at 186.

7. *See also Buffler v. Electronic Computer Programming Institute, Inc.,* 466 F.2d 694, 698 (6th Cir. 1972) (dictum).

8. *Enelow v. New York Life Insurance Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Insurance Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942).

9. *Power Replacements, Inc. v. Air Preheater Co.,* 426 F.2d 980, 983 (9th Cir. 1970); *A & E*

*Plastik Pak v. Monsanto Co.,* 396 F.2d 710, 713 (9th Cir. 1968). Reliance on the *Enelow-Ettelson* rule seems somewhat beside the point since it provides for appealability only if the suit which is stayed is legal in nature, an artificial distinction justified by the literal language of, but not the policy behind § 1292(a)(1). Most courts have declined to apply the rule's law-equity distinction in the stay of arbitration context. *See Buffler v. Electronic Computer Programming Institute, Inc.,* 466 F.2d 694, 697 n. 4 (6th Cir. 1972).

10. *Goodall-Sanford, Inc. v. Textile Workers,* Local 1802, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957); *compare Schoenamsgruber v. Hamburg American Line,* 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935).

11. *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.,* 293 U.S. 449, 55 S.Ct. 78, 79 L.Ed. 666 (1935).

12. *Baltimore Contractors, Inc. v. Bodinger, supra.*

trate is necessarily contractual in origin. Thus by definition we are dealing with a situation in which the party resisting arbitration appears prima facie to have agreed to the procedure at least in certain circumstances. If the arbitrators decide more than the contract of the parties committed to them the court in a subsequent enforcement proceeding will afford judicial review. The cost of participating in a proceeding which may ultimately be set aside is not the kind of injury against which § 1292(a)(1) is intended to guard.[13] Stateside also complains that in arbitration there is no provision for discovery, but that fact was apparent when it signed the contract with Alperin. Thus we do not think this allegation can be considered as stating injury of the nature to which § 1292(a)(1) is addressed. We conclude that an order preliminarily denying a stay of an arbitration proceeding is not appealable under that statute.

### B. Appealability of the stay of the district court action.

Stateside also urges that if the district court action was not a denial of its motion for an injunction, it was, implicitly, the grant of Alperin's motion for an injunction against the continuation of the lawsuit. The district court never ruled on that motion, but Stateside argues that Judge Sheridan's failure to rule, conjoined with his simultaneously permitting the arbitration to go forward, is the equivalent of granting the requested relief. In this argument Stateside relies upon the constructive order

cases, which recognize that a district court's failure to rule on a motion for injunctive relief may be appealable under § 1292(a)(1) where the effect of the court's silence is to force the aggrieved party to endure the effects of the conduct of which he complains.[14] The argument is ingenious, but in this case unavailing for two reasons. First, the district court has taken no action which prevents Stateside from proceeding with its lawsuit.[15] Thus the factual predicate for the constructive order doctrine—that by failing to rule on an application for injunctive relief the court has left the appealing party in the position of suffering the same harm as if the court had ruled against him—is not present here. Second, even if we were to construe the district court's action as a constructive grant of a motion to stay the action before it, the order would not in this case be appealable.

In its amended complaint Stateside seeks rescission of the September 8, 1973 contract, recovery of payments made, and consequential and punitive damages. Had it sought only damages for breach of contract, its complaint would set forth the classic action at law.[16] A stay of such an action is appealable under the Enelow-Ettelson rule. If the relief sought sounds primarily in equity, however, this court has held that a stay order is not appealable.[17] Where, as here, the complaint sets forth both legal and equitable claims that are mutually exclusive, some courts have said that the action should be characterized as equitable for purposes of the Enelow-Ettelson rule unless the equitable relief sought can be

---

**13.** Since the relative speed and economy of arbitration are generally regarded as major incentives to the election of that form of conflict resolution as an alternative to judicial proceedings, we do not believe that the sums occasionally wasted on arbitration are likely to prove of sufficient magnitude to cause irreparable harm.

**14.** See, e. g., United States v. Lynd, 301 F.2d 818 (5th Cir. 1962); N.A.A.C.P. .v. Thompson, 321 F.2d 199 (5th Cir. 1963); Weiss v. Duberstein, 445 F.2d 1297 (2d Cir. 1971); Clean Air Coordinating Committee v. Roth-Adam Fuel Co., 465 F.2d 323 (7th Cir. 1972), cert. denied,

409 U.S. 1117, 93 S.Ct. 895, 34 L.Ed.2d 701 (1973). See also Cotler v. Inter-County Orthopaedic Ass'n, P. A., 526 F.2d 537 (3d Cir. 1975).

**15.** See note 2 supra. Compare Gavlik Constr. Co. v. H. F. Campbell Co., 526 F.2d 777 (3d Cir. 1975).

**16.** McCreary Tire & Rubber Co. v. CEAT, 501 F.2d 1032, 1034–35 (3d Cir. 1974); Gavlik Constr. Co. v. H. F. Campbell Co., 526 F.2d 777 at 781–82 (3d Cir. 1975).

**17.** Kirschner v. West Co., 300 F.2d 133 (3d Cir. 1962) (en banc).

characterized as "merely incidental" to a legal cause of action.[18] From the pleadings in this case we cannot dismiss Stateside's rescission claim as merely incidental to its action for damages. Faced with the task of characterizing a pure hybrid complaint as legal or equitable in nature, Judge Hufstedler recently commented:

> "When a complaint is a homogenization of legal, equitable, and statutory elements, and it cannot fairly be said that either the legal or the equitable aspects predominate, the complaint shall be deemed equitable for the purpose of applying the *Enelow-Ettelson* rule." *Danford v. Schwabacher,* 488 F.2d 454, 457 (9th Cir. 1973).

This approach seems to us consistent with the policies underlying § 1292(a)(1). Accordingly, we deem Stateside's complaint to be equitable, and the stay of the action, if there was one, would not be an appealable order, actual or constructive.

Alperin's motion to dismiss the appeal will be granted.

## IV. MANDAMUS RELIEF

Stateside's petition for mandamus need not detain us long. The action of the district court was taken within its jurisdiction, within the range of its lawful power. There was no abuse of discretion. Mandamus relief is in these circumstances unavailable. *See, e. g., Rodgers v. United States Steel Corp.,* 508 F.2d 152, 161 (3d Cir. 1975), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

## CONCLUSION

The appeal in No. 75–1300 will be dismissed. The petition for mandamus in No. 75–1216 will be denied.

18. *Thompson v. House of Nine, Inc.,* 482 F.2d 888 (5th Cir. 1973); *Chapman v. ILGWU,* 401 F.2d 626 (4th Cir. 1968); *Standard Chlorine, Inc. v. Leonard,* 384 F.2d 304 (2d Cir. 1967).