**H.C. LAWTON, JR., INC.,**

v.

**TRUCK DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION NO. 384, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Appellant.**

**No. 84–1344.**

United States Court of Appeals, Third Circuit.

Argued Jan. 15, 1985.

Decided Feb. 21, 1985.

---

Richard H. Markowitz (argued), William T. Josem, Markowitz & Richman, Philadelphia, Pa., for appellant.

Arnold F. Laikin (argued), Norristown, Pa., for appellee.

Before ADAMS and WEIS, Circuit Judges, and HARRIS, District Judge.*

### OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents two principal questions: (1) whether an order denying a stay so that a matter may be arbitrated constitutes an appealable order, and (2) whether a dispute over a "most favored nations" clause in a collective bargaining agreement should be decided by arbitration or by the district court.

H.C. Lawton, Jr., Inc., the employer, brought suit in the district court alleging that the union had violated the "most favored nations" clause by offering better contractual terms to a rival employer. Truck Drivers, Chauffeurs and Helpers Local Union No. 384 (Local 384) sought a stay pending arbitration. The district court denied the motion for a stay, and Local 384 appealed. Because we believe that the dis-

---

\* Honorable Oren Harris, United States District Court for the Eastern and Western Districts of Arkansas, sitting by designation.

pute is arbitrable, we will reverse and remand.

## I.

The relevant facts for purposes of this appeal are straight forward. From 1972 to the present, Lawton and Local 384 have been parties to a series of five collective bargaining agreements. Each of the first four agreements contained an identical "most favored nations" clause, Article 20, which reads as follows:

### BETTER TERMS OR CONDITIONS

Union agrees that if during the life of this Agreement it grants to any other Employer engaged in the same class of work as Employer under this Agreement, any better terms and/or conditions than those set forth in this Agreement, such better terms and/or conditions shall be made available to Employer under this Agreement and Union shall immediately notify Employer of any such concessions.

The current agreement, executed May 1, 1983, does not include the above clause.

All of the collective bargaining agreements also contain an article governing arbitration and grievance procedures, Article 6. The relevant sections read as follows:

*Section 4.* Any matter specifically covered by any provision of this Agreement, as well as any matter reserved solely to the discretion of the Employer by the terms of this Agreement, is not a grievance, dispute or difference of opinion and will not be construed as such.

*Section 5.* Except as set forth hereinabove, any and all matters of dispute, difference, disagreement, or controversy of any kind or character between Union and Employer involving or relating to the interpretation, construction or applications of the terms of this Agreement, and the relations between the parties arising during the term of this Agreement or any renewal thereof, which cannot be settled by the grievance procedure

set out hereinabove, shall be settled by arbitration.

On March 24, 1983, Lawton filed a complaint in the district court contending that Local 384 had violated Article 20 of the collective bargaining agreement. Lawton claimed that the Union had offered more favorable terms to at least two other employers. The complaint was amended on August 24, 1983; by order of the court, the amended complaint did not relate back to the date of filing of the original complaint.

On June 13, 1984, Local 384 filed a motion for a stay of proceedings in the district court pending arbitration, arguing that the dispute involved the "interpretation, construction or applications of the terms of [the collective bargaining] Agreement," and was therefore arbitrable under Article 6, Section 5. The district court denied Local 384's motion on the ground that the dispute was "specifically covered by [a] provision of [the] Agreement," and therefore was exempted from arbitration under Article 6, Section 4. This appeal followed.

## II.

We first address the question of appellate jurisdiction. A refusal to grant a stay is not ordinarily a final order for purposes of 28 U.S.C. § 1291, and the district judge did not certify this issue for appeal under 28 U.S.C. § 1292(b).[1] If we have jurisdiction, therefore, it must arise from 28 U.S.C. § 1292(a)(1), which establishes appealability of injunctive orders.

■ It is clear from the trial transcript that the district judge intended to have the question of arbitrability adjudicated by an immediate appeal. App. at 150a–151a. Rather than certify the matter, however, the judge relied upon this Court's opinion in *Boeing Co. v. International Union, U.A., A & A Imp. Wkrs.*, 370 F.2d 969 (3d Cir.1967), in which we held that a "refusal of the court to grant a stay of the action pending arbitration is appealable as an interlocutory decision under § 1292." 370

---

**1.** 28 U.S.C. § 1291 governs appealability of final orders; 28 U.S.C. § 1292(b) provides that a district court may certify non-final orders for interlocutory appellate review.

F.2d at 970. The Court in *Boeing* was referring to § 1292(a)(1), which allows appeals from grants of injunctions or refusals to grant injunctions. A stay of a proceeding is considered an appealable interlocutory order under § 1292(a)(1), *if* (1) the stay is sought to permit the prior determination of an equitable defense or counterclaim, and (2) the underlying action is at law rather than in equity. *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1072–73 (3d Cir.1983); *Becker Autoradio v. Becker Autoradiowerk*, 585 F.2d 39, 42 n. 7 (3d Cir.1978); *see Whyte v. Thinc Consulting Group Int'l*, 659 F.2d 817 (7th Cir.1981). This test is referred to as the *Enelow-Ettelson* rule, derived from two Supreme Court cases. *See Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *see also Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 766–770 (3d Cir.1984); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure* § 3923 (1977).

 The first prong of the *Enelow-Ettelson* rule is satisfied here because the defendant sought a stay in order to arbitrate, and an agreement to arbitrate a legal dispute is considered an equitable defense. *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935); *Mediterranean Enterprises, Inc. v. Ssangyong*, 708 F.2d 1458, 1462 (9th Cir.1983). The second prong of the *Enelow-Ettelson* test is met if the underlying action is one which, before the merger of law and equity, could have been maintained as an action at law.[2] Where a complaint seeks both legal and equitable relief, the requirements of the second prong are fulfilled if the equitable claims are "merely incidental" to the legal claims, *Stateside Machinery Co., Ltd. v. Alperin*, 526 F.2d 480, 484–85 (3d Cir.1975), or if the complaint is predominantly an action at law. *Mediterranean Enterprises*, 708 F.2d at 1462.

While the amended complaint in this case is entitled "amended complaint in equity" and on its face seeks equitable relief in addition to damages, all of the equitable claims had been mooted when the amended complaint was filed. Plaintiff sought an injunction restraining violation of the most favored nations clause, and reformation of other terms of the agreement to comply with the clause's dictates. When the original complaint was filed, the collective bargaining agreement then in effect contained a most favored nations clause; by the time the amended complaint was filed, however, the old agreement had expired and a new agreement had been entered into, effective May 1, 1983, containing no such clause. As noted, the amended complaint does not relate back to the original complaint. Without an existing most favored nations clause, there is no basis for equitable relief, and the only viable claim is for damages suffered while the most favored nations clause was in effect. Equitable claims that on their face have no legal basis may properly be characterized as "merely incidental." *Stateside Machinery*, 526 F.2d at 484–85.

 Moreover, both parties in the district court proceeding appear to have treated the action as one solely for damages suffered under the old collective bargaining agreement. See App. at 130a (counsel for the employer limits the scope of claims to the period before April 30, 1983, the date of old agreement's expiration). Indeed, damages are all the relief that properly could be afforded. As such, the action

---

**2.** This requirement can be traced to the origin of the rule during the period before the merger of law and equity; its extension to the post-merger situation has been recognized as lacking a rational basis by most of the courts of appeals and even by the Supreme Court itself. *See Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 184–85, 75 S.Ct. 249, 254–55, 99 L.Ed. 233 (1955); *Mellon Bank, N.A. v. Pritchard-Keang Nam Corp.*, 651 F.2d 1244, 1247 (8th Cir.1981); *Wallace v. Norman Indus., Inc.*, 467 F.2d 824, 827 (5th Cir.1972); *see also* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure* § 3923 n. 14 (1977) (and cases cited therein). Nevertheless, the test has not been repudiated by the Supreme Court or any other appellate court.

here is predominantly legal in nature, and the order denying the stay is appealable under § 1292(a)(1).

### III.

Not before us on this appeal is the primary substantive disagreement between the parties—concerning the application of the most favored nations clause to the union's contracts with other employers. Instead, the question we must answer is whether the controversy is arbitrable. If it is not arbitrable, the parties should return to the district court to adjudicate the merits of their dispute. If it is arbitrable, the district court should stay the case for arbitration.

The answer to the arbitrability issue turns on an interpretation of Sections 4 and 5 of Article 6, quoted above. The first clause of Section 4 and the whole of Section 5 appear at first glance to be in direct contradiction. Under section 4, if a matter is specifically covered by any provision of the collective bargaining agreement, it is not arbitrable. Under section 5, if a matter requires the "interpretation, construction, or applications of the terms of this agreement," it is arbitrable. But virtually any dispute will require interpretation and application of specific provisions of the contract. Thus, wherever there is a conflict requiring construction or application of a provision of the collective bargaining agreement, Section 5 suggests it is arbitrable and Section 4 suggests it is not.

One approach to resolving this ambiguity might be to read one section as overriding the other. The district court seems to have adopted such a solution, concluding that Section 4 in effect "trumps" Section 5, and that therefore the dispute is not arbitrable. However, the alternative conclusion, i.e., that Section 5 overcomes Section 4, is at least equally tenable. It may in fact be a preferable result, given the Supreme Court's repeated statements regarding the strong presumption favoring arbitrability.

See *Nolde Bros., Inc. v. Local 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). This Court has stated in the labor context that "there is a presumption in favor of arbitrability which should be dispelled only when the agreement explicitly exempts certain conduct from arbitration or when the terms of the agreement, read as a whole, clearly envision non-arbitrability." *Controlled Sanitation Corp. v. District 128, Int'l Assn of Machinists*, 524 F.2d 1324, 1328 (3d Cir. 1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). "Only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague." Id. at 1328 (quoting *Warrior & Gulf*, 363 U.S. at 585, 80 S.Ct. at 1354). In this case, while Section 4 itself may not be vague, when read in the context of Section 5 and the balance of Article 6 (governing grievances and arbitration), it is certainly ambiguous. Thus, if it were necessary to choose between giving effect to Section 4 or Section 5, it might be more appropriate to favor arbitration by choosing Section 5.

However, we are not constrained by such mutually exclusive options. The better approach is to consider the agreement as a whole; "as in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory." *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Yard-Man, Inc.*, 716 F.2d 1476, 1480 (6th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984); *cf. Papago Tribal Utility Authority v. Federal Energy Regulatory Commission*, 610 F.2d 914, 929 (D.C.Cir.1979) ("apparently conflicting provisions are to be construed with a view toward reconciliation").[3] If Section 4 and

---

3. Our interpretation of the collective bargaining agreement is governed by substantive federal law, but traditional rules of contractual interpretation apply where not inconsistent with fed-

Section 5 are to be reconciled without rendering either section a nullity, a line must be drawn that respects the spirit and intent of each clause. On one side of the line would be non-arbitrable disputes, i.e., those "specifically covered by any provision of this Agreement." On the other side would be arbitrable disputes, i.e., those "involving or relating to the interpretation, construction, or application of the terms of this Agreement." We believe that Section 4, barring arbitration, encompasses such matters as hourly rates or the number of holidays and vacation days specified in the collective bargaining agreement. App. at 12a. Disagreements over these contract matters might constitute attempts to modify specific terms of the agreement by arbitration, and it is reasonable to assume that the parties did not want a specific wage rate, for example, to be arbitrated having been once agreed upon. However, if disputes arose over whether the wage rate was applicable to a certain worker, or whether the wage rate referred to overtime as well as regular time, the disputes might be arbitrable under Section 5 as requiring the application and interpretation of the terms of the agreement, despite the fact that the amount of the wage is in some sense "specifically covered" in the agreement.

This reading harmonizes the two sections, *and* favors arbitration, thus satisfying two prime interpretive dictates regarding judicial review of collective bargaining agreements—i.e., that *all* contractual provisions be read to make sense, and that arbitration be favored. Lawton's reading, adopted by the district court, renders much of Section 5 essentially meaningless, and consequently violates both the first principle of contract interpretation as well as the presumption favoring arbitrability. Lawton seeks to limit arbitrability to matters wholly within the interstices of the terms of the collective bargaining agreement. It suggests that if no specific provision covers the dispute, it can be arbitrated; correlatively, if any specific provision covers the

dispute, it is not arbitrable. If such were the rule, Section 5, which characterizes as arbitrable all "applications of the terms of this agreement," would serve little or no purpose. Any time one party pointed to any provision of the agreement for support of its argument, the matter would have to be litigated rather than arbitrated. In light of the Supreme Court's policy of preferring arbitration, we are reluctant to adopt such a result.

Lawton's reliance on *Bechtel Power Corp. v. Wyoming Valley Bldg. & Constr. Trades Council,* 496 F.Supp. 175 (M.D.Pa. 1980), is unavailing. In that case, the collective bargaining agreement specifically exempted from arbitration all disputes concerning "damages arising from any work stoppage or lockout." The employer sued the union in federal court for damages arising from a work stoppage. The union, seeking arbitration, argued that the dispute involved the question of liability for the work stoppage, and not merely damages arising from the work stoppage. The court found this distinction specious in light of the unambiguous exception in the collective bargaining agreement, and the nature of the case, which was expressly an action for damages arising from a work stoppage.

The case at hand is different, in that the exception is far less clear, and there is a competing clause requiring arbitration whenever application or interpretation of the agreement's terms are required. Moreover, whether the union violated the most favored nations clause is not susceptible to resolution without interpretation or application of the clause at issue.

■ Application of the most favored nations clause to the union's contracts with other employers would raise several questions of contract construction. The clause refers to better terms offered "during the life of this Agreement"; the Union maintains that some of the contracts Lawton refers to were executed before the one in question, and that others became effective

eral labor policies. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957); *Yard-Man,* 716 F.2d at 1479.

on the same date as Lawton's contract. The question of the scope of the effective "life of this Agreement" therefore requires construction. Moreover, there is an equally difficult interpretive question concerning the meaning of "better terms and conditions": Does that phrase refer to the contract as a whole, or does it require that each individual term and provision be identical? These are questions "involving the interpretation, construction or applications of the terms of this Agreement," and as such they are arbitrable under Article 6, Section 5.

## IV.

For the foregoing reasons, the order of the district court will be reversed, and the case remanded for the district court to enter a stay in order that the matter may proceed to arbitration.