## The BELL TELEPHONE COMPANY OF PENNSYLVANIA

v.

## COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, DISTRICT 13 et al.

Civ. A. No. 87–521.

United States District Court, E.D. Pennsylvania.

Feb. 13, 1987.

Hurbert Thurshwell, Elizabeth Sampath, Philadelphia, Pa., for plaintiff.

Richard H. Markowitz, Philadelphia, Pa., for Communications Workers of America.

Miriam Gafni, Philadelphia, Pa., for American Arbitration Assoc.

### MEMORANDUM

NEWCOMER, District Judge.

In this case, Bell Telephone Company of Pennsylvania ("Bell of Pennsylvania"), a subsidiary of Bell Atlantic Corp., seeks to have the court enjoin the Communications Workers of America ("CWA" or the Union), formerly the Federation of Telephone Workers of Pennsylvania, from arbitrating with Bell of Pennsylvania certain grievances arising from the conduct of Bell Atlanticom Systems, Inc. ("Atlanticom"), an-

other subsidiary of Bell Atlantic. The Union disputes Bell of Pennsylvania's characterization of the grievances at issue as encompassing only conduct of Atlanticom. Rather, the Union asserts that the grievances are directed at conduct of Bell of Pennsylvania as well. For the reasons discussed below, Bell of Pennsylvania's motion for a preliminary injunction will be denied.[1]

## I. *Relevant History*

This case was assigned to my calendar as related to *Bell Atlanticom Systems, Inc. v. Federation of Telephone Workers of Pennsylvania et al.*, C.A. 84–6342 [Available on WESTLAW–DCT database]. In that case, Atlanticom sought a determination that it was not bound to arbitrate grievances arising from the collective bargaining agreement between the Union and Bell of Pennsylvania. Bell of Pennsylvania and the Union had adopted a Memorandum of Agreement in June 1982, which bound Bell of Pennsylvania to "secure, as a condition of any sale or other voluntary transfer of ownership of all or part of its business and physical assets, the assent of any successor organization that the collective bargaining agreement between it and [the Union] shall continue in effect and bind the successor organization." In a Memorandum and Order dated April 21, 1986, I ruled that the agreement between the Union and Bell of Pennsylvania did *not* bind Atlanticom or its employees, but rather that Atlanticom was a separate entity for purposes of labor law. I also found that Atlanticom was not a "successor organization" as that term was intended in the Memorandum of Agreement, because there was no transfer of business, physical assets or employees from Bell of Pennsylvania to Atlanticom. As a result I permanently enjoined certain arbitration proceedings brought against Atlanticom by the Union. That decision was not appealed.

## II. *Facts*

In the instant action, Bell of Pennsylvania seeks to enjoin the processing of five arbitration cases brought by the Union against Bell of Pennsylvania. According to Bell of Pennsylvania, the arbitration cases at issue involve Union objections to actions of Atlanticom, not Bell of Pennsylvania. "The Union is attempting to hold Bell [of Pennsylvania] liable for the actions of an independent Company, Atlanticom, which is not a party to the Bell/Union labor Agreement[,] on the basis that Atlanticom and Bell [of Pennsylvania] are a single entity." Bell of Pennsylvania has objected to the continuing arbitration of these five disputes, but the Union is pursuing them.

In its Memorandum of Law opposing the motion for the preliminary injunction, the Union makes several points. First, the Union makes clear that it is not seeking to arbitrate grievances against Atlanticom, but rather only against Bell of Pennsylvania. Second, and more to the heart of the matter, the Union asserts that Bell of Pennsylvania is actually seeking a determination of the merits of the grievances by the court.

Exhibit I to Bell of Pennsylvania's verified complaint is the Collective Bargaining Agreement between Bell of Pennsylvania and the Union. Article 13 of the Agreement allows for the arbitration of matters permitted under the Agreement. Article 10 governs the manner and timing of the submission of disputes arising under the contract to the grievance procedure, and ultimately to arbitration if necessary. In particular, section 10.05 provides as follows:

> If, at any time, a controversy should arise between the Union and the Company regarding the true intent and meaning of any provision of this Agreement or regarding any claim that either party has not performed a commitment of this Agreement, the controversy may be presented for review under [the grievance procedure]. If the controversy is

---

**1.** This Memorandum and Order will constitute my findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52(a).

processed ... and is not satisfactorily settled, the Union or the Company, by written notice specifying the Section of the Agreement alleged to be violated, may submit the question under dispute to arbitration in accordance with the provisions of Article 13 of this Agreement.

Bell of Pennsylvania has attached to its Memorandum of Law in Support of the Motion for a Preliminary Injunction the affidavit of James R. Hoy, Division Staff Manager—Arbitration and Labor Relations for Bell of Pennsylvania. The Hoy affidavit describes and is followed by Exhibits A through P. The affidavit and the exhibits detail the grievances which the Union seeks to arbitrate against Bell of Pennsylvania. The exhibits consist largely of letters, addressed to Bell of Pennsylvania's Division Manager for Labor Relations, which describe the nature of the grievances asserted by the Union. For example, Exhibit A at ¶ 2 describes a grievance contained in Arbitration Case Number 14 30 0117–85 J, as follows:

*# 13–8439B Bell Atlantic Mailing Out Sets—Violation of U.P.S. Arbitration Award:* Bell Atlantic is in violation of the U.P.S. Arbitration Award. Mrs. Renoldi from the Business Office is referring customers to Bell Atlanticom. The Company is in violation of the U.P.S. Award. Last discussed with G. Roberts on October 15, 1984.

On its face, this grievance and many others appear to state a violation by both Bell Atlanticom and the Company, which refers to Bell of Pennsylvania. This description is typical of the 21 grievances presented by the five Arbitration Cases which are the subject of this lawsuit.

### III. *Legal Analysis*

■ Bell of Pennsylvania is currently seeking a preliminary injunction of the processing of the five arbitration cases, consisting of twenty-one grievances, pending a final determination by the court whether the disputes are subject to arbitration under the labor agreement between Bell of Pennsylvania and the Union. The law is clear that whether a dispute is subject to arbitration under a labor agreement is ini-

tially a question for the courts and not for the arbitrator. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. ——, ——, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 656 (1986); *American Bell Inc. v. Federation of Telephone Workers of Pennsylvania,* 736 F.2d 879, 884 (3d Cir.1984). There is in federal labor law a strong presumption of arbitrability of disputes. *AT & T Technologies, supra,* 475 U.S. at —— – ——, 106 S.Ct. at 1418–20, 89 L.Ed.2d at 656–57; *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1963); *H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs and Helpers Local Union No. 384,* 755 F.2d 324, 328 (3d Cir.1985).

■ In deciding the arbitrability of disputes, the court's function is limited. The court is not to delve into the merits of the dispute. *AT & T Technologies, supra,* 475 U.S. at ——, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining *whether the party seeking arbitration is making a claim which on its face is governed by the contract.* Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.... The courts therefore have no business weighing the merits of the grievance.... The agreement is to submit all grievances to arbitration, not merely those the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware. (Emphasis added, footnote omitted.)

*United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960). *See also AT & T Technologies, supra,* 475 U.S. at ——, 106 S.Ct. at 1418, 89 L.Ed.2d at 656. Here, the parties have agreed to submit all questions of contract interpretations and compliance to arbitra-

tion. Article 10.05 of the Collective Bargaining Agreement.

■ At oral argument on the instant motion, held on February 9 and 12, 1987, and in their brief, Bell of Pennsylvania contended that the Union's grievances which are the subject of this lawsuit were all initially directed at conduct of Atlanticom, not of Bell of Pennsylvania; and that the grievances were only portrayed as describing violations by Bell of Pennsylvania after the Union was enjoined from arbitrating against Atlanticom by the earlier lawsuit. The Union vigorously contested this characterization of the grievances by Bell of Pennsylvania, asserting that the grievances were originally asserted against Atlanticom, Bell of Pennsylvania and the parent company, Bell Atlantic. Bell of Pennsylvania further argued that the grieving of these same complaints against Bell of Pennsylvania constitutes in essence an entirely new grievance, and that the grievance procedure outlined in Article 10 of the Collective Bargaining Agreement does not permit such an amendment of the grievance at the arbitration stage of the procedure. In other words, Bell of Pennsylvania takes the position that, because the Union grievances allegedly did not assert from the beginning that Bell of Pennsylvania had violated the Agreement, then its arbitration of those grievances must fail and may be enjoined.

I disagree. Under the law cited above, I am required to look to the nature of the grievances at issue. If the particular grievances on their face make a claim which is governed by the contract, then arbitration is proper. Furthermore, the nature of preliminary injunctive relief and the presumption of arbitrability requires the movant here to bear a very heavy burden to establish its entitlement to the relief requested. Under the law and the facts presented by this case, I conclude, at least at this stage of the proceeding, based on the evidence now before me, that the Union should not be preliminarily enjoined from proceeding to arbitration.

While the grievances as originally described in large measure state violations attributed to Atlanticom, they also state on their face and by direct implication a significant number of claims against Bell of Pennsylvania. The Union further argues that Bell of Pennsylvania's interpretation of the grievances as stating claims against Atlanticom alone is both too narrow, and not a determination for the court. Because the Arbitration Cases can reasonably be read to state claims against Bell of Pennsylvania, the Union is entitled to arbitrate those grievances.

Furthermore, the infirmity attributed to the grievances by Bell of Pennsylvania, resulting from the alleged eleventh hour amendment by the Union, is a matter for the arbitrators to determine. If the Union did not comply with the time limits contained in Article 10 of the Agreement in stating grievances against Bell of Pennsylvania, then they will not prevail on their claims. But whether or not the original claims, seen in light of the history of arbitration between Bell of Pennsylvania and the Union and the meaning of the agreement, were timely filed and in fact broad enough to provide a basis for relief are not issues for the court. Those questions quite clearly go to the interpretation of the grievance procedure contained in the Agreement and of the grievances themselves on their merits, a task properly for the arbitrators.

Ultimately, Bell of Pennsylvania appears to be arguing that the Union's claims against it are either procedurally improper under the terms of the Agreement, or frivolous. Unfortunately for Bell, the court is not permitted to draw either of these conclusions. While the court has previously concluded that Bell of Pennsylvania and Atlanticom are separate entities for purposes of labor relations, it did not then and cannot now determine Bell of Pennsylvania's obligations to its Union employees under the Collective Bargaining Agreement. Such matters, at least in the first instance, are for grievance and arbitration under the Collective Bargaining Agreement.

IV. *Relief Sought: Preliminary Injunction*

In considering a motion for a preliminary injunction, a court must consider four

factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by the denial of the preliminary injunction; (3) whether granting the preliminary injunction will result in even greater harm to the non-moving party; and (4) whether granting preliminary relief will be in the public interest. *S.I. Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985). Bell of Pennsylvania has failed to establish a reasonable probability of success on the merits. For that reason, its motion fails.